UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SHAUN BURGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00938 |
| | ) | Judge Aleta A. Trauger |
| KENNETH WILBER, DEWELL SCRUGGS, | ) | |
| and ANTHONY W. HEAVNER | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court is the defendants' Motion for Summary Judgment (Doc. No. 29), to which

the plaintiff has filed a response in opposition (Doc. No. 38), and the defendants have replied (Doc.

No. 41). For the reasons discussed herein, the Motion for Summary Judgment will be granted in

part and denied in part.

## BACKGROUND

The plaintiff, Shaun Burgett, is a former Portland City policy officer, who began his

employment with the Portland City Police Department ("PCPD") in May 2012. (Doc. No. 40-17

¶ 2.) Before joining the PCPD, the plaintiff worked for four years as a correctional officer for the

Sumner County Sheriff's Department. (*Id.*) In early 2016, defendant Kenneth Wilber ("Mayor

Wilber"), Mayor of Portland, Tennessee, appointed defendant Dewell Scruggs ("Defendant

Scruggs") Interim Chief of Police at the PCPD, the position he held until defendant Anthony

Heavner ("Chief Heavner") took over as the permanent Chief in May 2016. (*Id.* ¶ 3.) As Interim

Chief, Defendant Scruggs was in charge of all police officers in the department, including the

plaintiff. (*Id.*)

1

From April 18 to April 22, 2016, the plaintiff was scheduled for five days of mandatory training to take place at the Gallatin Police Department. (*Id.* ¶ 4.) During that time, the plaintiff had the flu and called in sick on April 20 and 21. (*Id.*) The plaintiff notified his training supervisor at the Gallatin Police Department that he was sick. (*Id.*) He returned for his final day of training on April 22. (*Id.*)

On April 25, 2016, the plaintiff reported for his regular shift at the PCPD. (*Id.* ¶ 5.) When the plaintiff arrived, his immediate supervisor told the plaintiff that he had to write him up for two "no-call, no-shows" as a result of the two sick days the prior week because the plaintiff did not notify his immediate supervisor at the PCPD. (*Id.*) The plaintiff felt he had done nothing wrong and requested to speak to Sergeant Ellis, who was superior to the plaintiff's supervisor at the PCPD. (*Id.*) When speaking with Sergeant Ellis, the plaintiff became agitated and used foul language while voicing his objection to the write-up. (*Id.*) Defendant Scruggs was in the building at the time and overheard most of the conversation. (*Id.*)

After the plaintiff left, Defendant Scruggs called Mayor Wilber, told him about the conversation, and sent him a video of the conversation with a recommendation that the plaintiff be terminated. (*Id.*) As of April 25, 2016, the plaintiff did not have any disciplinary issues at the PCPD. (*Id.*)

The plaintiff requested a pre-termination hearing with Mayor Wilber, which was held on May 18, 2016. (*Id.* ¶ 8.) The plaintiff was suspended without pay from April 26, 2016 until this hearing with Mayor Wilber. (Doc. No. 40-18 at 31-32). On May 24, 2016, Mayor Wilber issued his pre-termination decision, recommending to the City Council that the plaintiff be terminated. (Doc. No. 40-17 ¶ 9.) The plaintiff requested a full evidentiary hearing before the Portland City Council, which was held on June 21, 2016. (*Id.*) The City Council unanimously overturned Mayor

Wilber's recommendation to terminate the plaintiff and returned the plaintiff to active duty. (*Id.* ¶ 10.)

Following the City Council's ruling, Mayor Wilber approved the following actions with regard to the plaintiff: (1) 10 days, unpaid suspension and no holiday pay for Independence Day; (2) mandatory participation in and completion of a counseling program in anger and conflict management; (3) a follow-up P.O.S.T. psychological exam; (4) a discussion of job assignment will be conducted and communicated by the end of the suspension period; and (5) failure to meet performance, attendance, and behavior standards in the future will result in further disciplinary action up to and including termination. (Doc. No. 39 ¶ 1.) Defendant Scruggs was not involved in determining how to "handle" the plaintiff after the hearing. (*Id.* ¶ 42.)

On July 6, 2016, the plaintiff returned to work, and Mayor Wilber provided him with a letter that: (1) reassigned him to patrolling Richland and Meadow Parks; (2) assigned him to cover any special events during his duty; and (3) assigned him to handle any animal control calls during his tour and to complete a thorough investigation and enforcement of appropriate state statutes of instances of animal cruelty and/or neglect. (*Id.* ¶¶ 2-3.) The plaintiff's pay and benefits did not change with his new position. (*Id.* ¶ 7.) The plaintiff had reason to believe that this reassignment in job responsibilities was permanent because the letter stated that the changes would be "until further notice." (*Id.* ¶ 30.)

As a result of his reassignment of job responsibilities, the plaintiff suffered humiliation within the PCPD and the community. (*Id.* ¶ 8.) The plaintiff resigned from his employment with the PCPD on August 31, 2016 because of this humiliation. (*Id.* ¶¶ 31, 33-35.) At the time the plaintiff resigned, he had not taken a psychological examination. (*Id.* ¶ 37.)

## LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" *Id.* at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374.

## ANALYSIS

### I. Due Process Retaliation

The plaintiff claims that the defendants violated his constitutional rights by suspending him for ten days without pay and reassigning his job responsibilities in retaliation for exercising his due process rights. To establish a retaliation claim for exercising a constitutional right, a plaintiff must show: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378,

394 (6th Cir. 1999) (en banc)). Once a plaintiff raises an inference that the defendant's conduct was motivated in part by the plaintiff's protected activity, the burden shifts to the defendant to demonstrate that he would have taken the same action in the absence of the protected activity. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011). The court analyzes whether each defendant has met his summary judgment burden on the plaintiff's due process retaliation claim in turn.

### A. Defendant Scruggs

Defendant Scruggs argues that summary judgment should be granted in his favor because the plaintiff cannot demonstrate that Defendant Scruggs took an adverse action against him after the City Council hearing. The plaintiff does not appear to contest this argument. (*See* Doc. No. 38 at 23.)

A person sued in his individual capacity under § 1983 can only be held liable for his own unconstitutional behavior. *Handy-Clay v. City of Memphis*, No. 10-2927-STA-tmp, 2013 WL 5305239, at *18 (W.D. Tenn. Sept. 19, 2013) (citing *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)). In other words, "[p]ersonal involvement is necessary to establish section 1983 liability." *Id.* (quoting *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)) (alteration in original). The plaintiff does not dispute Defendant Scruggs's claim that he did not take part in deciding how to "handle" the plaintiff after the hearing before the City Council. (Doc. No. 39 ¶ 42; *see id.* ¶¶ 21, 38; Doc. No. 38 at 23.) Furthermore, the plaintiff has pointed to no evidence in the record indicating that Defendant Scruggs was involved in this decision. Accordingly, the court will grant summary judgment in favor of Defendant Scruggs and dismiss the claim against him with prejudice.

## B. Defendants Heavner and Wilber

### 1. Protected Activity

Related to the first element of the plaintiff's retaliation claim, the defendants solely move for summary judgment based on the argument that the plaintiff did not engage in a protected activity because he was never terminated and therefore was not deprived of his property interest. However, in making this argument, the defendants confuse the first element of a retaliation claim with the standard for establishing a due process violation. *See Banks v. City of E. Cleveland*, 106 F.3d 400 (6th Cir. 1997) (per curiam) (holding that, to demonstrate a procedural due process violation, the plaintiff must establish: "(1) that he has a life, liberty, or property interest protected by the Due Process Clause; (2) that that interest was 'deprived' within the meaning of the Due Process Clause; and (3) that adequate procedures were not afforded prior to the deprivation of the protected interest."). To establish that the plaintiff engaged in a protected activity—in this case, demanding his due process rights—he need not ultimately be deprived of his property right. Rather, the plaintiff must only exercise his constitutional right to be heard before any such property deprivation, which the plaintiff did before the City Council. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The defendants do not dispute that the plaintiff's employment is a property interest protected under the due process clause. *See* Doc. No. 30 at 24 ("[T]here is no dispute that Plaintiff had a property interest in his employment."). Accordingly, the defendants have not met their summary judgment burden on the first element of the plaintiff's retaliation claim.

### 2. Adverse Action

The defendants argue that they are entitled to summary judgment because the plaintiff cannot establish an adverse action based on his voluntary resignation and inability to establish constructive discharge.[1]  However, as the plaintiff aptly contends, the defendants' argument ignores at least one other adverse action the plaintiff experienced.

An action is sufficiently adverse to be cognizable in a § 1983 retaliation claim if it "would chill or silence a 'person of ordinary firmness' from future [constitutionally protected] activities." *Thaddeus-X*, 175 F.3d at 397 (quoting *Crawford-El v. Britton*, 93 F.3d3, 826 (D.C. Cir. 1996)); *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).  The Sixth Circuit has defined "adverse employment action" in a variety of employment discrimination cases.  *See Gritton v. Disponett*, Civ. No. 3:05-75-JMH, 2007 WL 3407459, at \*6 (E.D. Ky. Nov. 14, 2007), *aff'd*, 332 F. App'x 232 (6th Cir. 2009).  In *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789 (6th Cir. 2004), the court held that, to be adverse, an employment action must "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 798.  A plaintiff must "show that []he suffered a materially adverse change in the terms of h[is] employment."  *Id.* at 797 (internal quotation marks and citation omitted).  However, "[a] mere inconvenience or an alteration of job responsibilities or a bruised ego is not enough to constitute an adverse employment action."  *Id.* (internal quotation marks and citation omitted).  Although "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions," *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996), "[a]

---

[1] The court declines to address the defendants' constructive discharge argument because, as discussed herein, the defendants are not entitled to summary judgment based on the plaintiff's evidence of a different adverse action taken against him.

reassignment without salary or work hour changes . . . may be an adverse employment action if it constitutes a demotion evidenced by a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *White*, 364 F.3d at 797 (internal quotation marks and citation omitted).

The relevant facts related to this issue are, for the most part, undisputed. When the plaintiff returned to work after his ten-day suspension, Mayor Wilber provided him with a letter that: (1) reassigned him to patrolling Richland and Meadow Parks; (2) assigned him to cover any special events during his duty; and (3) assigned him to handle any animal control calls during his tour and to complete a thorough investigation and enforcement of appropriate state statutes of instances of animal cruelty and/or neglect. (*Id.* ¶¶ 2-3.) The plaintiff was also required to clean animal cages and feed animals as part of his new responsibilities. (Doc. No. 40-1 at 89; Doc. No. 40-18 at 51-52.) Mayor Wilber testified that, prior to this time, no police officer had been assigned these tasks as part of their regular shift. (Doc. No. 40-18 at 51-52.) A material issue of fact remains as to whether the plaintiff's new job responsibilities were temporary or permanent. Mayor Wilber testified that he planned to return the plaintiff to his duties as a police officer at regular lineup if he fulfilled EAP and P.O.S.T. certification. (Doc. No. 40-18 at 46.) However, the plaintiff contends that the July 6, 2016 letter does not state that such assignment was temporary (*see* Doc. No. 40-13), and Mayor Wilber never informed him that it was (Doc. No. 40-18 at 46).

Based on this evidence, a reasonable jury could find that the plaintiff's reassignment in job responsibilities—especially if they were permanent—would chill or silence a person of ordinary firmness from future due process activities and therefore constitute an adverse action. In addition, the plaintiff's new position constitutes significantly diminished material responsibilities and a less prestigious position, which the Sixth Circuit has stated can constitute an adverse action. *See*

*White*, 364 F.3d at 797. Accordingly, the defendants have not met their summary judgment burden on this issue.[2]

### 3. Causation

Chief Heavner argues that summary judgment should be granted in his favor because it is undisputed that he was not the final decision maker and therefore did not take part in the alleged adverse employment action. Heavner's argument is unavailing. This court, following Sixth Circuit precedent, has held that an "influential recommender" sued in his individual capacity may be liable for a constitutional retaliation claim, even though that individual was not a final decision maker. *Williams v. City of Franklin, Tenn.*, 586 F. Supp. 2d 890, 896 (M.D. Tenn. 2008) (Trauger, J.) (citing *Ward v. Athens City Bd. of Educ.*, No. 97-5967, 1999 WL 623730, at *8-9 (6th Cir. Aug. 11, 1999)); *see also Cohenour v. City of Winchester, Tenn.,* No. 4:04-cv-15, 2007 WL 956513, at *4 (E.D. Tenn. Mar. 29, 2007) (noting that a plaintiff may succeed on a First Amendment retaliation claim against an individual who is not a final decision maker if the plaintiff demonstrates a "causal nexus" between the individual's "improper animus" and the "decision of the final decision-maker"). In *Ward*, the Sixth Circuit held that "an influential recommender can be liable under § 1983 without being the final decision maker, if the recommendations are shown to be sufficiently influential." 1999 WL 623730, at *8.

Although the plaintiff "conced[es] that Mayor Wilber was the primary decision maker in crafting and implementing the adverse actions against [the plaintiff]" (Doc. No. 38 at 23), the court finds that evidence in the record demonstrates that Chief Heavner's recommendation was

---

[2] The plaintiff also appears to argue that the ten-day suspension without pay and imposition of anger and conflict management counseling and a psychological examination were adverse employment actions. Because the court finds that the plaintiff has demonstrated an adverse employment action based on the reassignment in job responsibilities, the court need not address the plaintiff's additional arguments.

sufficiently influential. Heavner testified in his deposition that both he and Mayor Wilber discussed changing the plaintiff's job responsibilities, and the July 6, 2017 letter, which outlined the plaintiff's new job responsibilities, was a result of their conversation. (Doc. No. 40-31 at 14-15.) Heavner signed the July 6, 2017 letter. (Doc. No. 40-13.) Furthermore, Mayor Wilber's affidavit states that Chief Heaver made recommendations to him regarding the plaintiff. (Doc. No. 33 ¶ 19.) Thus, viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find that Chief Heaver was sufficiently influential in the decision to reassign the plaintiff's job responsibilities to be liable under § 1983. Accordingly, Chief Heavner is not entitled to summary judgment based on the argument that he was not the final decision maker.

The plaintiff also raises a genuine dispute of material fact as to the third element of his retaliation claim. "A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action." *Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014) (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010)). A dispute of material fact exists as to direct evidence of Mayor Wilber's retaliatory animus. The plaintiff testified in his deposition that Mayor Wilber told him that "he didn't want this to go to the city council" before Wilber suspended him for ten days without pay. (Doc. No. 40-1 at 59.) However, Wilber's affidavit states that the plaintiff's decision to appeal his termination "to the Board of Mayor and Alderman played no role in my decision to suspend . . . or otherwise discipline him." (Doc. No. 33 ¶ 18.)

In addition, circumstantial evidence of Heavner's and Wilber's retaliatory animus exists, given the close temporal proximity between the City Council hearing and the adverse employment action. The decision to suspend the plaintiff for ten days without pay occurred "the night of the city council." (Doc. No. 40-1 at 59.) The plaintiff received the July 6, 2016 letter regarding the

reassignment of his job responsibilities when he returned to work after he fulfilled his suspension. (Doc. No. 39 ¶¶ 1-2.)  This timeframe is sufficient to raise the inference that Heavner and Wilber harbored retaliatory animus.  Accordingly, Chief Heavner and Mayor Wilber are not entitled to summary judgment based on the third element of the plaintiff's retaliation claim.

### 4.  Same Decision Absent Protected Conduct

The defendants also argue that they are entitled to summary judgment because they would have reached the same decision about the plaintiff's employment in the absence of protected conduct.  As previously discussed, once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to show that it would have reached the same employment decision in the absence of the protected conduct.  *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 371.  Once the employer presents this evidence, summary judgment is warranted if no reasonable juror could fail to return a verdict for the defendant.  *Williams v. Zurz*, 503 F. App'x 367, 371 (6th Cir. 2012). The defendants argue that Mayor Wilber would have made the same decision to discipline the plaintiff because the plaintiff violated police department policy when he acted insubordinately. However, the defendants point to no evidence in the record to support this assertion.  Therefore, Defendants Heavner and Wilber are not entitled to summary judgment on the plaintiff's retaliation claim.

## II.  Qualified Immunity

The defendants argue that, even if the plaintiff raises a genuine issue of material fact as to whether he suffered a violation of his constitutional rights, they should nonetheless be granted qualified immunity because those rights were not clearly established at the time the lawsuit was filed. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

If a defendant asserts qualified immunity, the plaintiff bears the burden of showing: (1) "a violation of a constitutional right" and (2) that "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232. A clearly established right must be described to a reasonable degree of certainty in Supreme Court or lower court precedent. *See Bell v. Johnson*, 308 F.3d 594, 601-02 (6th Cir. 2002); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). With this background in mind, the court examines whether the right to be free from retaliation for engaging in a constitutionally protected activity—in this case, procedural due process—is clearly established.

As previously discussed, "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The parties agree that the plaintiff had a property interest in his continued employment. *See* Doc. No. 30 at 24. In addition, "[i]t is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386. Thus, the right to be free from an adverse employment action for engaging in constitutionally protected activity, in this case procedural due process, is clearly established. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . .

. for speaking out."); *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir. 1997) ("[A] claim of retaliation for exercise of the constitutional right of access is cognizable under § 1983."); *Williams v. Kentucky*, 24 F.3d 1526, 1537 (6th Cir. 1994) (finding defendants not entitled to qualified immunity where right to be free from adverse employment action on basis of speech concerning political patronage and corrupt activities was clearly established). Accordingly, Heavner and Wilber are not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth herein, the defendants' Motion for Summary Judgment (Doc. No. 29) will be granted in part and denied in part. The motion will be granted as to Defendant Scruggs and the claim against him will be dismissed with prejudice. The motion will be denied as to Defendants Heavner and Wilber. An appropriate order will enter.

ENTER this 10th day of October 2018.

ALETA A. TRAUGER
United States District Judge